IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | Case No. 25-CR-226-JFH |
| **JAMES SAMUEL EATON,** | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court is the Appeal of Magistrate Judge's Order and Brief in Support ("Appeal") filed by the United States of America ("Government"). Dkt. Nos. 22-23. In its Appeal, the Government seeks revocation of an order entered by United States Magistrate Judge D. Edward Snow setting pretrial conditions of release for Defendant James Samuel Eaton ("Defendant"). The Court has reviewed Defendant's Response and Exhibits [Dkt. Nos. 29-30], the transcript of the detention hearing [Dkt. No. 28], and the pretrial services report. For the following reasons, the Government fails to satisfy its burden, so its Appeal must be DENIED.

## BACKGROUND

Defendant is charged under 18 U.S.C. § 373(a) for soliciting, commanding, inducing, and endeavoring to persuade another to kill a federal officer in violation of 18 U.S.C. § 1114, and influence, impede, and retaliate against a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1). Dkt. No. 2 at 1. Defendant has also been charged under 18 U.S.C. § 875(c) for knowingly and willfully transmitting a communication in interstate commerce which contained a threat to murder and assault a federal law enforcement officer with the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). *Id.* at 2.

Following his arrest on November 25, 2025, the Government moved for a detention hearing in front of Judge Snow. Dkt. Nos. 9, 15. Judge Snow conducted Defendant's detention hearing on November 26, 2025. Dkt. No. 19. During the hearing, the Government presented evidence that Defendant allegedly published multiple posts on "X" calling for violence against ICE officers, DHS officers, and law enforcement, including several advocating that those officers be shot and assaulted. The Government also presented an "X" conversation between Defendant and another unknown individual where they privately discussed President Trump and Vice-President Vance. Dkt. No. 28 at 32-36. In particular, Defendant told the other individual he was "less and less comfortable with sitting on the sidelines," to which the other individual replied, "me too but at the same time wtf am I supposed to do . . . . only thing that will solve this is Trump being dead . . . . only thing I can do is like plot a manifesto . . . . then we get fuckhead Vance." *Id.* Defendant then replied, "even that won't bc—yeah Vance." *Id.* Furthermore, the Government showed that Defendant participated in an online groupchat where an unknown individual provided the rest of the group with the birth date and address of Officer Daniel J. Pantaleo, the officer who killed Eric Garner in New York. *Id.* at 36-38.

Ultimately, Judge Snow held the Government did not satisfy its burden to detain Defendant. Dkt. No. 28 at 99. Judge Snow then set the conditions of his release which included, among other conditions, that Defendant surrender his passport, that he avoid all contact with ICE and DHS agents, that he not possess a weapon, that he participate in a location monitoring program supervised by the United States Probation Office, that he refrain from using any social media platforms, and that he consent and comply with a Probation Officer monitoring and searching his computer and other devices. Dkt. No. 21. The Government subsequently appealed Judge Snow's release order later that afternoon. Dkt. Nos. 22-23.

## STANDARD OF DECISION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, under the Bail Reform Act, a defendant may be detained pending trial only if the judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); § 3142(b), (c). The judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f). The Government bears the burden of proving risk of flight by a preponderance of the evidence or dangerousness to any other person or to the community by clear and convincing evidence. *Id.* § 3142(f).

Furthermore, "[i]f a person is ordered released by a magistrate judge," which occurred here, then "the [G]overnment may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. 3145(a). The court having original jurisdiction over the offense will then conduct a de novo review of the magistrate judge's release order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

"On de novo review of a magistrate judge's order, the district court is charged with making 'an independent determination of the proper pretrial detention or conditions for release.' " *United States v. Garcia*, 445 Fed. Appx. 105, 108 (10th Cir. 2011) (quoting *Cisneros*, 328 F.3d at 616 n. 1). Pursuant to 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of Defendant and protect the safety of any other person or the community. The Court must consider the following factors when making this determination:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

   terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristic of the person, including –

   a. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   b. Whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

## ANALYSIS

Applying the factors outlined in 18 U.S.C. § 3142(g), the Government fails to show that no conditions of release can reasonably assure the safety of any other person and the community and that there are no conditions of release that would reasonably assure Defendant's required appearance.

**A. The Nature and Circumstances of the Offense Charged**

The Court will first examine the nature and circumstances of the offenses charged. Defendant is charged under 18 U.S.C. § 373(a) for solicitation to commit a crime of violence, specifically to kill a federal officer in violation of 18 U.S.C. § 1114, and to influence, impede, and retaliate against a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1). Dkt. No. 2 at 1. Defendant has also been charged under 18 U.S.C. § 875(c) for knowingly and willfully transmitting a communication in interstate commerce which contained a threat to murder and assault a federal law enforcement officer. *Id.* at 2.

Taken together, the charges contained in the Indictment and the evidence presented at the detention hearing are very serious. In short, Defendant has allegedly published numerous posts calling for the deaths of ICE officers, DHS officers, and law enforcement, possibly engaged in an online conversation about assassinating President Trump and Vice-President Vance, and was a member of an online groupchat that "doxed" a law enforcement officer in New York. If Defendant is convicted of soliciting the murder of federal law enforcement officers, then that conviction alone may warrant up to twenty years in prison. 18 U.S.C. § 373(a). Accordingly, this factor weighs in favor of detention.

**B. Weight of the Evidence**

Next, the Court must examine the weight of the evidence against the Defendant. This factor requires the Court to "consider the weight of the evidence as to the criminal charges against the [D]efendant," not just the weight of evidence as to Defendant's dangerousness. *United States v. Ewton*, No. 21-7052, 2021 WL 4955610, at *3 (10th Cir. Oct. 26, 2021) (citing *Cisneros*, 328 F.3d at 618). However, in doing so, the Court may not modify or limit Defendant's presumption of innocence. *See* 18 U.S.C. § 3142(j)[1].

The Court will start with Defendant's solicitation charge under 18 U.S.C. § 373(a). To prove a violation of § 373(a), "the [G]overnment must establish (1) with strongly corroborative circumstances that a defendant intended for another person to commit a violent federal crime, and

---

[1] Defendant, mistakenly citing a Ninth Circuit case as Tenth Circuit precedent, argues that this factor is categorically "the least important of the 3142(g) factors." Dkt. No. 29 at 9 (incorrectly citing *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). However, the Tenth Circuit has indicated that "the plain language of § 3142(g) does not suggest that one factor matters more or less than another." *United States v. Bragg*, No. 21-5082, 2021 WL 6143720, at *2 (10th Cir. Dec. 30, 2021). "Rather, applying and weighing the relative importance of the statutory factors requires an individualized determination that necessarily differs for each defendant depending on the circumstances of the case." *Id.*

5

(2) that a defendant solicited or otherwise endeavored to persuade the other person to carry out the crime." *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010); *see also United States v. Holveck*, 867 F. Supp. 969, 977 (D. Kan. 1994). "A list of non-exhaustive corroborating circumstances of the defendant's intent include whether the defendant repeatedly solicited the commission of the offense, the defendant's belief as to whether the person solicited had previously committed similar offenses, and whether the defendant acquired the tools or information suited for use by the person solicited." *Id.* Ultimately, "the language of the solicitation statute picks out those who persuade others to commit a violent crime, seriously intending that they do so." *United States v. Buckalew*, 859 F.2d 1052, 1054 (1st Cir. 1988).

Although the Government argues that "there is substantial evidence that the Defendant committed the offenses of which he is now charged," the Government's conclusory argument in its Appeal is insufficient to satisfy its burden. It is also noteworthy that, at a bare foundation, the Government does not even address the elements of the offenses charged.

The Defendant was also charged under 18 U.S.C. § 875(c), which makes it illegal to "[1] transmit[ ] in interstate or foreign commerce [2] any communication containing [3] any threat to kidnap any person or any threat to injure the person of another." *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018) (quoting 18 U.S.C. § 875(c)). For this crime, the Government "must [also] prove the defendant transmitted the communication for the purpose of issuing a threat or with knowledge the communication would be viewed as a threat." *Id.* (citing *Elonis v. United States*, 575 U.S. 723 (2015)). In § 875(c) cases, the Tenth Circuit has defined a threat as "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* (quoting *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015)). And,

"[i]n line with the First Amendment, § 875(c)'s threat element requires proof that a reasonable person would understand the communication to be a threat." *Id.*

In contrast to the solicitation charge, the weight of evidence at this stage appears to be stronger for his threat charge, enough for the Court to weigh this factor, overall, in favor of the Government.

### C. History and Characteristics of Defendant

Next, the Court will also review Defendant's history and characteristics. When reviewing the history and characteristics of a defendant, a court should consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

The Government concedes that Defendant has no criminal history. Dkt. No. 23 at 8. Instead, the Government contends that "his continuous and repetitive threats against federal law enforcement officers speak for themselves and demonstrate that he is a radical." *Id.* Additionally, the Government emphasizes that several documents and note cards found in his bedroom containing anti-law enforcement and anarchist language are "further evidence of his radicalism and true character." *Id.*

However, the Government's argument is unpersuasive. Indeed, the Government essentially focuses on Defendant's character as a "radical." But the Government makes no argument as to how being a "radical" makes him more likely to miss his mandated court proceedings. Nor does the Government argue why the potential dangers of Defendant's alleged radicalness cannot be stifled by his release conditions.

In contrast, the rest of the considerations outlined in § 3142(g)(3)(A) favor Defendant's release. Indeed, the Court received twenty-three-character letters submitted by his family, friends, co-workers, church leaders, and teachers, all of whom advocated for his peacefulness, work ethic, and other character traits. *See generally* Dkt. Nos. 30-1 through 30-23. These letters not only highlight his positive ties to his community, but they also show that he has substantial family and community support. Furthermore, according to his pretrial services report, Defendant has zero criminal history and little to no history of substance abuse. In fact, Defendant who is currently twenty-two years old, has held steady employment since he was sixteen, is currently pursuing his second associates degree, and plans to complete a bachelor's degree in mechanical engineering. True, as the Government points out, he has travelled outside the United States multiple times, but these trips were either for family vacations or with a church group to build a chapel. There is no other evidence of Defendant's foreign ties, and Defendant's mother has even vowed to surrender his passport if required for his release. Relatedly, Defendant lives at home with his parents who, as stated above, have already indicated their strong willingness to help him comply with his release conditions. Because Defendant has a strong support system, stable employment, little to no substance abuse history, minimal connections to foreign countries, and no criminal history, this factor strongly weighs in favor of pretrial release.

### D. Danger to the Community

The fourth and final factor requires the Court to assess "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). For this factor, the Government argues that "[t]he inherent nature" of Defendant's social media activity "shows just how serious these charges are and how much of a danger the Defendant is to the community." Dkt. No. 23 at 8. But, Defendant's charges stem entirely from

8

his alleged communications and engagement on social media. Accordingly, his conditions of release prohibit him from using any social media and allow the United States Probation Office to monitor his technology use. Dkt. No. 21. The Government fails to explain why these conditions are inadequate. And given his strong family and community support, as well as the United States Probation Office's supervision over him, the Court is persuaded that Defendant will comply with those conditions. Accordingly, this factor also strongly weighs in favor of Defendant.

***

As a reminder, the Government must show (1) no conditions of release can reasonably assure the safety of any other person and the community and (2) there are no conditions of release that would reasonably assure Defendant's required appearance. To do so, the Government bears the burden of proving Defendant's flight risk by a preponderance of the evidence and his dangerousness to any other person or to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). But after applying these factors, the Court concludes that the Government has not satisfied its burden to detain Defendant.

Critically, Defendant's strong support system, stable employment, little to no substance abuse history, minimal connection to foreign countries, and no criminal history persuade the Court that Defendant will attend his required appearances and is very unlikely to commit future criminal acts. This is especially true where the Government has provided minimal evidence as to Defendant's flight risk, and outside of pointing to the charged conduct, provided little evidence that Defendant poses a danger to the public. And above all, the Government fails to provide sufficient evidence or argument that *no* conditions of release can assure the safety of the public or assure Defendant's required court appearances.

Nevertheless, the seriousness of Defendant's charges and the weight of evidence for his threat charge persuade the Court to modify several of Defendant's conditions of release. First, Defendant is prohibited from possessing *and having access* to a "firearm, destructive device, or other weapon." Dkt. No. 21, box (7)(L). This means that wherever Defendant chooses to reside during the pendency of his pretrial release, there cannot be a firearm located at that residence. The United States Probation Office is directed to ensure Defendant complies with this modification.

Second, to ensure the United States Probation Office can adequately monitor Defendant, the Court will also require Defendant to submit to any location monitoring technology as directed by the pretrial services or supervising officer. Dkt. No. 21, box (r)(ii)(1).

Accordingly, Defendant's original and modified conditions of release prohibit him from possessing weapons, accessing weapons (including at his residence), and using social media. They also require him to consent to the United States Probation Office's utilization of location monitoring and its monitoring of his technology use. Combined with his history, characteristics, and strong family and community support, the Court is assured that Defendant will not pose a threat to public safety and will attend his future court appearances.

## CONCLUSION

IT IS THEREFORE ORDERED that the Government's Appeal is DENIED. Dkt. Nos. 22-23. IT IS FURTHER ORDERED that the conditions of release set by the Magistrate Judge at Dkt. No. 21 are modified consistent with this Opinion.

Date: December 4, 2025

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE