IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 25-CR-226-JFH |
|  | ) |  |
| JAMES SAMUEL EATON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**DEFENDANT'S RESPONSE TO GOVERNMENT
MOTION IN LIMINE RE "THIRD-PARTY 'THREAT' STATEMENTS"**

Defendant James Samuel Eaton hereby responds to the Motion in Limine (ECF No. 32) filed by the government on December 9, 2025. In the Motion, it appears that the government asks this Court to prohibit Mr. Eaton from proffering evidence of, or even referring to, any purported "third-party 'threat' statements." For the reasons set forth below, this Court should deny the government's request.

**A.  The Court should deny the government's Motion in Limine because it is vague and unclear, and any decision by the Court on the motion would give no meaningful guidance to the parties at trial.**

The government's motion broadly asks the court to exclude all evidence of any "'threat' statements" made by anybody else. At a minimum, the government's request is premature and vague. "Most objections will prove to be dependent on trial context" and are therefore not appropriate for ruling based on a motion in limine. *United States v. McVeigh*, 153 F.3d 1166, 1200 (10th Cir. 1998); *United State v Mejia-Alarcon*, 995 F.2d 982, 986-88 (10th Cir. 1993) ("some admission decisions are very fact-bound

determinations dependent upon the character of the evidence introduced at trial" and are therefore not issues that can be finally decided in a pretrial hearing). This Court should refuse to enter an order in limine that does nothing more than tell the attorneys to follow the Federal Rules of Evidence. That is plainly what the government wants the Court to do.

For starters, it is unclear what Mr. Eaton stands accused of doing that constitutes a federal crime. Based on the Indictment, Mr. Eaton does not have notice of what he is accused of doing. The government accuses Mr. Eaton of committing felonies by making social media posts that it says amounted to a solicitation of murder (Count One) and a criminal threat (Count Two). The Indictment does not identify which communication or communications were criminal; instead, it merely references a three-month window. Nor does it identify the target of the solicitation for murder or indicate who was supposed to be threatened. (Mr. Eaton plans to challenge the Indictment for this and other reasons in a motion that will be filed before the motion deadline.)

In addition to this lack of clarity concerning the actus rea for the alleged crimes, the government's motion fails to identify particular "third-party 'threat' statements" that it wants the Court to exclude. Moreover, the government does not define the term "third-party 'threat'" statement, leaving the Court and Mr. Eaton to guess what would be covered by the ruling, even if the Court granted the motion in limine.

The confusion is heightened because the government's motion also appears to misunderstand the concept of "true threat." The government appears to have been

2

motivated to file its motion because the government believes defense counsel argued at a detention hearing that statements made by figures like President Trump and the New York Young Republicans were "threats." Specifically, the government contends that defense counsel argued at the detention hearing "that the threats made by the Defendant against Federal law enforcement officers, to specifically include DHS and ICE officers, are akin to 'threat' statements made by President Donald J. Trump and/or other third-parties as part of the current political climate of today's society." ECF No. 32 at 7.

The government misunderstands defense counsel's point. Mr. Eaton is not asserting that President Trump or other public figures made "true threats." On the contrary, Mr. Eaton's point was, instead, that political rantings, including those by public figures and political leaders, are not threats:

> [Mr. Eaton] is a young, dumb 22-year-old. And the problem is, it is not just him. It is the political climate that we have created in this country.

Det. Hr'g. Tr. 81:6-8.

Any statements by Mr. Eaton that are similar to those made by others are likewise political speech, not statements that Mr. Eaton thought would be acted upon by others. Mr. Eaton's own alleged obnoxious comments should not be deemed to be "true threats" merely because the United States or the Department of Homeland Security dislikes the statements. His argument is that the First Amendment protects him to the

3

same extent it protects all speech, including that of President Trump, the New York Young Republicans, and the Proud Boys.

For these reasons, the Court should decline to enter the order in limine sought by the government.

**B.     An analysis of whether any given statement is a "true threat" or protected speech requires context, and this context is relevant to Mr. Eaton's defense.**

All that being said, there is potential that evidence of vituperative statements made by other persons could be relevant to Mr. Eaton's defense. To convict Mr. Eaton of Count II of the Indictment, the government must prove beyond a reasonable doubt that: (1) Mr. Eaton subjectively understood his online comments to constitute a "true threat"; and (2) the recipients of the threats perceived the comments to be "true threats." Moreover, the government must show that any alleged statements made by Mr. Eaton were not protected speech under the First Amendment.

The social and online media context in which Mr. Eaton's statements were allegedly made is extremely important to those issues. The United States Supreme Court addressed this concept in 1969, holding that whether a statement was political speech had to be evaluated in the American social context of the Vietnam War. *Watts v. United States*, 394 U.S. 705 (1969). Mr. Watts reportedly said at a rally in Washington, D.C.:

> [N]ow I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.

4

*Watts* at 706.

A jury found Mr. Watts guilty of "knowingly and willfully threatening the President." *Id.* The Supreme Court said that the statute under which Mr. Watts had been prosecuted had to be interpreted "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 708 (*quoting New York Times Co. v. Sullivan*, 376 U.S 254, 270 (1964)). The *Watts* Court noted that the "language of the political arena … is often vituperative, abusive, and inexact. We agree with petitioner that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the President.'" *Id.* The *Watts* Court reversed and remanded, with instructions to enter a judgment of acquittal. *Id.*; *see also Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010) ("Context is crucial and can turn what, out of context, appears to be a statement of fact into 'rhetorical hyperbole,' which is not actionable" in § 1983 action seeking damages for criminal prosecution under Colorado libel statute).

No reasonable person really thinks that rap lyrics that state intentions to shoot a rival constitute a "true threat." No reasonable person thinks that Johnny Cash "shot a man in Reno just to watch him die." Nobody familiar with the X (formerly Twitter)

5

platform believes that every person venting about the government and expressing hopes for violence in social media posts intends for violence to imminently happen.

At Mr. Eaton's trial, he should be allowed to dispute the government's assertion that *his* comments *were* true threats by demonstrating that the comments were made in the context of the current social, political, and online climate. The current social, political, and online culture is awash with vehement, caustic, unpleasantly sharp, abusive, crude, and offensive comments. Yet it is widely understood that such statements are not intended as true threats, nor are they received as such, nor are they perceived as such. Some of these comments are even made by political leaders in this country, instructing the public that similar messages are lawful acts of free expression, not criminal threats. Mr. Eaton has the right to present evidence of this cultural and social climate to demonstrate that his alleged comments were not true threats but rather expressions of disgust with the federal government.

**C.    Evidence of others' public comments is relevant to demonstrate that Mr. Eaton is being prosecuted for acts protected by the First Amendment.**

The First Amendment protects the advocacy of political violence in the absence of an intent to produce immediate disorder. *See Counterman v. Colorado*, 143 S. Ct. 2106, 2115-16 (2023) (citing *Hess v. Indiana*, 414 U.S. 105, 109 (1973)). "[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such

action." *Brandenburg v. Ohio*, 395 U.S. 460, 447, 449 (1969). The First Amendment likewise protects vile, disturbing, and violent expressions. *See, e.g., United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) (insufficient evidence to convict defendant of making a true threat against a presidential candidate based on online posts about Barack Obama, including the statements "fk the niggar, he will have a 50 cal in the head soon" and "shoot the nig").

Mr. Eaton has the right to present evidence that contextualizes his own statements to demonstrate that they were political hyperbole made in forums where hyperbole is part of the zeitgeist. While some people may have viewed his alleged statements as vehement, caustic, unpleasantly sharp, abusive, crude, or offensive, the statements were intended to express his opposition to the Department of Homeland Security's actions. If Mr. Eaton's alleged statements were political hyperbole or even advocating violence without more, then he was engaging in free speech, not crime.

**D.  Evidence of other vituperative statements in media and online forums is not hearsay because the statements would not be offered for their truth.**

The government implies that "third-party 'threat' statements" – whatever that means – would be hearsay inadmissible under Federal Rule of Evidence 802. To be hearsay, a statement must be offered to admit the truth of the matter asserted in the statement. Fed. R. Evid. 801. Mr. Eaton will not introduce evidence about other people's statements to prove the truth of those statements. Any evidence of the vitriolic and hyperbolic state of online banter will instead be admitted to show the effect on the

7

listeners, which may include Mr. Eaton himself or any persons who would have read his alleged online statements.

**E.     Limiting defense argument by pretrial order is error.**

The government appears to ask this Court to enter an order *now* prohibiting defense counsel from making certain closing arguments (although it is unclear what certain arguments should be prohibited). The government does not recognize that "prosecutors and defense lawyers are given 'wide latitude' in closing arguments." *United States v. Wilkes*, 662 F.3d 524, 538 (9th Cir. 2011). "Arguments may be forceful, colorful, or dramatic, without constituting reversible error. Counsel may resort to poetry, cite history, fiction, personal experiences, anecdotes, biblical stories, or tell jokes." *United States v. Gregory*, 54 F.4th 1183, 1210-11 (10th Cir. 2022) (quoting *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1133 (10th Cir. 2009) (Gorsuch, J.)).

It would be impossible for this Court to decide what arguments counsel can make four months before a trial. As a general proposition, limiting closing arguments by pre-trial ruling is inappropriate. *See, e.g., Stenson v. Edmonds*, 2022 WL 19299121 at *7 (D. Colo. 2022) ("Improper argument will be excluded from either party at trial, but it is not appropriate to preemptively request its exclusion through a motion *in limine*"); *United States v. Lujan*, 2011 WL 13210248 at *2 (D.N.M. 2011) ("Due to the highly-charged nature of summation, it is extremely difficult to rule in advance of trial that a particular argument is improper."). This Court should not make a pre-trial ruling that would potentially foreclose arguments by the defense at the jury trial.

8

## F. It is constitutional error for the Court to limit the evidence in a manner that prevents Mr. Eaton from presenting his theory of defense.

Mr. Eaton's First Amendment right to free expression of political views is not the only fundamental right at issue in this case. The Fifth and Sixth Amendments to the United States Constitution guarantee Mr. Eaton's right to present a complete defense and confront witnesses. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *United States v. Serrano*, 406 F.3d 1208, 1214 (10th Cir. 2005) ("A criminal defendant's right to present a defense is essential to a fair trial"). The holding of *Holmes* was that a South Carolina evidentiary rule violated the petitioner's right to present a complete defense. *Holmes*, 547 U.S. at 330-31.

Assuming for the sake of analysis that the Court does not grant a judgment of acquittal, at trial Mr. Eaton will be entitled to a jury instruction concerning the protections guaranteed by the First Amendment. *See Matthews v. United States*, 485 U.S. 58, 63 (1988) ("[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). An instruction on the First Amendment is warranted when the charged conduct may constitute mere advocacy. *See Counterman*, 600 U.S. at 76 ("'[M]ere advocacy' of illegal acts [is] a kind of speech falling within the First Amendment's core"); *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1985) (Kennedy, J., for maj. op.) (holding "the trial court erred by instructing the jury that the First Amendment was

irrelevant" where defendant's speech could be construed as criticizing "tax laws generally" and not "intended and likely to produce an imminent criminal act").

This Court should not exclude essential defense evidence that would address whether Mr. Eaton's statements were crude expressions of political opposition rather than "true threats." *See United States v. Killingsworth*, 2022 WL 294083 at *4-5 (6th Cir. Feb. 1, 2022) (unpublished). Evidence of the sorts of speech that occur in the sorts of forums where Mr. Eaton allegedly posted his comments would violate Mr. Eaton's right to present his defense. If this Court were to grant the government's Motion, it would exclude critical evidence without there being a strong policy reason for such exclusion.

**Conclusion**

The Court should deny the government's motion in limine.

Respectfully submitted,

OFFICE OF THE FEDERAL PUBLIC DEFENDER
Scott Graham, Federal Public Defender

By: s/ *Barbara L. Woltz*
  Barbara L. Woltz, O.B.A. No. 12535
  Assistant Federal Public Defender
  112 N. 7th St.
  Muskogee, Oklahoma 74401
  Telephone: (918) 687-2430
  E-mail: Barbara_L_Woltz@fd.org
  Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a

Notice of Electronic Filing to the following ECF registrant(s): **Terry Cameron McEwen**.

*s/ Barbara L. Woltz*